WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re DAWN PETERSEN, | No. CIV 06-2975 PHX RCB |
| Debtor, | (BK 02-1937- PHS SCC) |
| DAVID A. PETERSEN, | Adversary No. 02-0576 |
| Appellant, | BAP No. AZ-00-0000 |
| vs. | ORDER |
| DAVID BIRDSELL, | |
| Appellees. | |

    On November 13, 2006, the bankruptcy court entered a final
judgment against appellant/defendant David A. Petersen
("defendant"), ordering him to pay to the Trustee/appellee, David
Birdsell ("Trustee"), $70,462.87.  That sum represents debtor Dawn
Petersen's share of property from her dissolved marriage to
defendant David Petersen.  Defendant timely filed a Notice of
Appeal from that judgment on November 22, 2006.  He also timely
filed a Statement of Election, in accordance with 28 U.S.C.

1  § 158(c) and Fed. R. Bank. Pro. 8001(e),[1] electing to have his

2  appeal heard by this district court rather than by a three judge

3  panel of the bankruptcy appellate panel service.   Pursuant to 28

4  U.S.C. § 158(a),[2] this district court has jurisdiction to hear this

5  appeal.                        ***Background***

6      This is the second time this matter has been before the court.

7  The primary issue continues to be the value of the residence

8  located at 841 East Desert Park Lane, Phoenix, Arizona (the

9  "property" or "subject property") in which the Petersens resided

10  "[d]uring most of their marriage[.]" Rec., exh. 9 thereto at 3.

11  Because Mr. Petersen inherited that house from his mother, it was

12  his "sole and separate property." Rec. (exh. 4 thereto at 2

13  (citation omitted).   At the date of transfer to Mr. Petersen the

14  house had "a value of $180,000.00[,]" which appreciated to

15  $300,000.00 over the course of the marriage.   Id., exh. 9 thereto

16  at 3; see also id., exh. 4 thereto at 2 (citation omitted); and

17  exh. 5 thereto at 3, n.2.

18      Following the first trial in this matter, "without any

19  explanation or citation[,]" the bankruptcy court "simply declared .

20  . . that this entire [appreciated] amount belonged to the

21  community." Id., exh. 4 thereto at 5.   Explaining that "[t]he

22  amount of the community's interest in the house can only be

23

24 ─────────────────

25      [1]      Because debtor's action was commenced prior to October 17, 2005, the
   effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of
26  2005, all chapter and sections references to the Bankruptcy Code,  and all rule
   references to the Federal Rules of Bankruptcy Procedure are as they existed prior
   to the enactment of that of that Act.

27      [2]      That statute provides in relevant part that "district courts . . .
28  shall have jurisdiction to hear appeals . . . from final judgments . . . of
   bankruptcy judges[.]" 28 U.S.C. § 158(a)(1).

1  determined once there has been a factual finding of what portion of

2  the $120,000 of appreciation was due to expenditure of community

3  funds and what portion was due simply to the inherent nature of the

4  separate property[,]" this court vacated the bankruptcy court's

5  judgment and remanded, *inter alia*, for a "factual determination" as

6  to that issue.  Id., exh. 4 thereto at 6.

7      Between the time of this court's decision (March 29, 2004) and

8  the trial on remand (May 9, 2005), Mr. Petersen sold the subject

9  property.  Id., exh. 9 thereto at 3 (footnote and citation

10  omitted).  During that intervening period the property "increased

11  in value[,]" and sold for $430,000.00[3] as compared to the "value

12  allocated to it at the initial trial[,]" *i.e.* $300,000.00.  See

13  Rec., exh. 5 thereto at 5.  An issue thus arose as to the proper

14  valuation date -- the date of dissolution or the sale date.  See

15  id. at 2.

16      In its August 15, 2005, order addressing the valuation date

17  issue, the bankruptcy court acknowledged this court's reliance upon

18  Honnas v. Honnas 648 P.2d 1045 (Ariz. 1982), to support a "value-

19  at-dissolution date[.]" Id. at 3.  Nonetheless, because the subject

20  property had been sold in the interim, the bankruptcy court

21  "separately researched the issue o[f] the appropriate valuation

22  date." Id. at 4.  In so doing, the bankruptcy court expressly

23  found "the analysis provided by" Sample v. Sample, 731 P.2d 604

24  (Ariz. App. 1986), "to be relevant to the facts currently before

25  it, rather than those set forth in" Honnas.  Id. at 5.  Reading

26  Sample as "holding that . . . the selection of a valuation date

27  _____

28      [3]    Rec., exh. 5 thereto at 3, n.2.

rest[s] within the sound discretion of the trial court," with the "only limitation" being "that the division of assets result in substantial equality[,]" the bankruptcy court held that the date of sale was the proper valuation date. Id. at 5 and 6. As further support for its use of the date of sale, the bankruptcy also relied upon Kelsey v. Kelsey, 918 P.2d 1067 (Ariz. Ct. App. 1996), wherein the court held that "[t]he valuation of assets is a factual determination that must be based on the facts and circumstances of each case." Kelsey, 918 P.2d at 1069 (citation omitted). Based upon the foregoing, the bankruptcy court "conclusively determined" that the property "shall be valued as of the date of sale[,]" rather than as of the dissolution date. Rec., exh. 5 thereto at 6.

In light of that finding, the bankruptcy court "reopen[ed] the evidentiary record on th[e] discrete issue" of the value of the subject property at the date of sale. Id. The bankruptcy court "specifically" sought "expert testimony as to the mortgage payments made on the Property by the community, the repairs that were made to the Property and by whom, and any market forces which would have affected the property from the purchase of the Property to the point of its sale." Id.

After weighing the testimony of the Trustee's expert, Roy E. Morris, III, and defendant's expert, Jan Sell, based upon a 2004 sale price of $430,000.00, the court assigned a value of $87,921.00 as "the appreciation due to market conditions alone (inherent value of the Property)[.]" Rec., exh. 9 thereto at 13. Further, the bankruptcy court found that "the marital community should be entitled to the sum of $162,079 for the increase in the value of the Property over the years and the increase in value due solely to

1   the improvements from community funds."  Id.  Of that amount, the

2   bankruptcy court held that the bankruptcy estate was only entitled

3   to one-half, "the other half being appreciation that would enure to

4   the benefit of [defendant][.]"  Id.

5                                 *Discussion*

6        On this appeal, defendant assigns ten separate errors to the

7   bankruptcy court's decision, nearly all of which pertain to the

8   property valuation issue.  Before addressing those claimed errors,

9   the court must address the Trustee's procedural argument that this

10  appeal should be dismissed due to defendant's supposed failure to

11  adequately cite to the record.   At a minimum, the Trustee contends

12  that "statements that are not supported by the record must be

13  stricken."  Tr. Brief (doc. 8) at 4.

14  *I.  Lack of Citations to Record*

15       Rule 8010 mandates, as the Trustee notes, that "[t]he brief of

16  the appellant . . . contain . . . citations to the authorities,

17  statutes and parts of the record relied on."  Fed. R. Bankr.

18  8010(a)(1)(E).  The Trustee asserts that defendant did not comply

19  with this Rule because more often than not he did not cite to the

20  record; he "mis-cite[d] the record[;]" or he cited to documents

21  which were not part of the record.  Tr. Brief (doc. 8) at 4.

22       This court is well aware, as the Trustee argues, that case law

23  exists to support dismissal "for failure to provide adequate

24  citations of the record[.]" See In re Tevis, 347 B.R. 679, 686 (BAP

25  9th Cir. 2006) (citations omitted).  Dismissal is not warranted in

26  the present case, however, because in contrast to Tevis,

27  defendant's briefs herein are not "entirely deficient in making

28  reference to the evidentiary record."  See id.  Likewise, also in

                                  - 5 -

1  contrast to <u>Tevis</u>, citations to the record are not "wholly missing"
2  from defendant's briefs.  <u>See</u> <u>id.</u> at 687.

3      To be sure, as the Trustee observes, there are no cites to the
4  record in section A(5) of defendant's "Opening Brief."  Def. Brief
5  (doc. 7) at 9-10.  Other citations are scattered throughout that
6  brief, however, as well as throughout his reply brief.  Thus,
7  although defendant's briefs could have benefitted from additional
8  cites to the record, he has sufficiently "compl[ied] with [the]
9  rules to enable [this court] to examine those materials that bear
10 on [his] arguments."  <u>See</u> <u>Everett v. Perez (In re Perez)</u>, 30 F.3d
11 1209, 1217 n. 12 (9th 1994).  This is not a situation where
12 "[n]umerous and egregious procedural violations may warrant
13 dismissal of [the] appeal."  <u>See</u> <u>Ward v. Circus Circus Casinos,</u>
14 <u>Inc.</u>, 473 F.3d 994, 997 (9th Cir. 2007) (citation omitted).
15 Accordingly, the court will not dismiss this appeal due to
16 inadequate cites to the record.  Likewise, the court finds no basis
17 for striking statements in defendant's briefs which are "not
18 supported by the record."  <u>See</u> Tr. Brief (doc. 8) at 4.

19     Having resolved this procedural issue, the court is now free
20 to consider the substantive errors which form the basis of
21 defendant's appeal.

22 ***II.  Standard of Appellate Review***

23     "The bankruptcy court's conclusions of law, . . . , are
24 reviewed de novo and its factual findings are reviewed for clear
25 error."  <u>In re International Fibercom, Inc.</u>, 2007 WL 2610892, at *4
26 (9th Cir. Sept. 12, 2007) (citation omitted).  "A finding is
27 'clearly erroneous' when although there is evidence to support it,
28 the reviewing court on the entire evidence is left with the

1   definite and firm conviction that a mistake has been committed."

2   United States v. Gypsum Co., 333 U.S. 364, 395 (1948). "As long as

3   findings are plausible in light of the record viewed in its

4   entirety, a reviewing court may not reverse even if convinced it

5   would have reached a different result."  Snider v. Sherman, 2007 WL

6   1174441, at *18 (E.D. Cal. April 19, 2007) (citing Wardley Int'l

7   Bank, Inc. v. Nasipit Bay Vessel, 841 F.2d 259, 262 n.1 (9th Cir.

8   1988)) (footnote omitted).

9   ***III.  Alleged Errors***

10          ***A.  Valuation Date***

11          The first error which defendant ascribes to the bankruptcy

12  court is its "conclusive[] determination" that the property should

13  be "valued as of the date of sale[,]" rather than as of the date of

14  dissolution of the marriage.  See Rec., exh. 5 thereto at 6.  The

15  Trustee's response is two-fold.  First he argues, albeit not in

16  precisely this way, that defendant waived his right to object to

17  the date of sale valuation date because he did not object earlier.

18  Second, the Trustee argues that even if the issue of the valuation

19  date is properly before this court on appeal, there is no merit to

20  defendant's challenge to that date.

21          Procedurally, the defendant retorts that the bankruptcy

22  court's 2005 order setting the sale date as the date of valuation

23  was an interlocutory order.  Hence, defendant reasons, the

24  valuation date issue is properly before this court "in conjunction

25  with this appeal of the final judgment in this case."  Def. Reply

26  (doc. 9) at 4.  Substantively, the defendant responds that the

27  Trustee's analysis of the valuation date (like the bankruptcy

28  court's) fails to take into account the distinction between

1  separate and community property.

2        **_1.  Scope of Appeal_**

3        To support his waiver argument, the Trustee relies upon the

4  "long-standing rule in the Ninth Circuit that, generally," an

5  appellate court "will not consider arguments that are raised for

6  the first time on appeal."  Raich v. Gonzales, 2007 WL 754759, at

7  *14 (9th Cir. March 14, 2007) (internal quotation marks and

8  citation omitted).  The Trustee further asserts that none of the

9  three exceptions to that rule apply here.[4]  Thus, the Trustee

10 concludes that the valuation date issue is "not properly before

11 this Court[.]" Tr. Brief (doc. 8) at 11.  Defendant counters, as

12 previously noted, that the valuation date order is "properly on

13 appeal" because it is an interlocutory order.

14       Defendant has the stronger argument, by far.  First of all,

15 the Trustee's waiver argument is wholly misplaced.  The valuation

16 date issue is not a new issue, which is being raised for the first

17 time on this appeal.   In its 2005 order, the bankruptcy court

18 noted at the outset the "parties['] disagree[ment]" on "two

19 critical points[,]" one of which was the property valuation date.

20 See Rec., exh. 5 thereto at 2.  Indeed, after the initial trial on

21 remand, it was the Trustee who raised the valuation date issue,

22 "question[ing]" the bankruptcy court's continued reliance on the

23

24       [4]     An appellate court may consider a "new issue if: (1) there are
exceptional circumstances why the issue was not raised in the trial court; (2) the
25 new issue arises while the appeal is pending because of a change in the law; or (3)
the issue present is a pure question of law and the opposing party will suffer no
26 prejudice as a result of the failure to raise the issue in the trial court."
Raich, 2007 WL 754759, at *14 (citation omitted).  The Trustee claims that he would
27 be "severely prejudiced" if this court were to invoke this last exception because
"re-open[ing] the date of valuation issue now, almost two years after the entry of
28 the Order in question and one year after trial, would require another expert
evaluation and another trial."  Tr. Brief (doc. 8) at 10.

1  value-at-dissolution date in light of the subsequent sale of the
2  property.  Id.  The fact that it was the Trustee who raised the
3  issue of the valuation date renders particularly disingenuous his
4  contention that that issue was raised for the first time on this
5  appeal.

6      Not only did this dispute as to the valuation date result in
7  the bankruptcy court's August 2005 order, but the change in
8  valuation date as reflected in that order required a continuance of
9  the trial on remand to allow expert testimony as to the value of
10 the subject property on the date of sale.  Plainly then, the issue
11 of the valuation date was before the bankruptcy court.  It is not a
12 new issue raised for the first on this appeal.  For the Trustee to
13 suggest otherwise strains credulity.  Thus, as the foregoing shows,
14 despite the Trustee's assertion to the contrary, the "general rule"
15 that an appellate court "will not consider issues raised for the
16 first time on appeal[]" does not apply here.  See United States v.
17 Carlson, 900 F.2d 1346, 1349 (9th Cir. 1990) (citations omitted).

18     The Trustee's argument that the August 15, 2005, order "is not
19 subject to appeal" also fails to take into account that that order
20 was interlocutory, not final.  That oversight is significant
21 because, as will be more fully discussed below, the interlocutory
22 nature of that August 2005 order brings it within the scope of this
23 appeal.

24     "[O]nly 'final' rulings of the bankruptcy court may be
25 appealed as of right" in accordance with 28 U.S.C. § 158(a).
26 Elliott v. Four Seasons Properties (In re Frontier Properties,
27 Inc.), 979 F.2d 1358, 1362 (9th Cir. 1992).  On the other hand,
28 interlocutory orders or decrees require "leave of the court" before

1  they can be appealed.  <u>See</u> 28 U.S.C. § 158(a).  "The final judgment

2  rule was designed to prevent piecemeal litigation, conserve

3  judicial energy, and eliminate delays caused by interlocutory

4  appeals."  <u>Frontier Properties</u>, 979 F.2d at 1362 (citing <u>Catlin v.</u>

5  <u>United States</u>, 324 U.S. 229, 233-34 (1945)).  A final decision, as

6  the Supreme Court has defined it, "is one that 'ends the litigation

7  on the merits and leaves nothing for the court to do but execute

8  the judgment.'"  <u>Id.</u> (quoting <u>Catlin</u>, 324 U.S. at 233) (other

9  citation omitted).

10      In the bankruptcy context, the Ninth Circuit, "in addition to

11  th[at] conventional test of finality," has adopted a " pragmatic

12  approach[,]" which "focuses on whether the decision appealed from

13  effectively determined the outcome of the case."  <u>Id.</u> at 1363.

14  (internal quotation marks and citations omitted).  "Specifically,"

15  the Ninth Circuit has held that "[a] bankruptcy order is final and

16  thus appealable where it 1) resolves and seriously affects

17  substantive rights and 2) finally determines the discrete issue to

18  which it is addressed." <u>Schulman v. Cal. (In re Lazar</u>), 237 F.3d

19  967, 985 (9th Cir. 2001)(internal quotations marks and citations

20  omitted).  So, for example, "[o]rders requiring disgorgement

21  resolve and seriously affect substances rights[,]" and hence are

22  final.  <u>Mosier v. United Education & Software</u>, 285 B.R. 442, 445

23  (C.D.Cal. 2002) (citing <u>Law Offices of Nicholas A. Franke v.</u>

24  <u>Tiffany (In re Lewis</u>), 113 F.3d 1040, 1043-44 (9th Cir. 1997)).  In

25  contrast, an order that leaves unresolved the amount of damages,

26  usually is not final.  <u>See Frontier Properties</u>, 979 F.3d at 1362-63

27  (citing cases).

28      Applying these well-settled principles to the present case

- 10 -

1  mandates the conclusion that the August 15, 2005, bankruptcy court

2  order is not final.  Arguably that order did satisfy the second

3  part of the finality test in that it "finally determine[d]" the

4  "discrete issue" of the valuation date.  See Frontier Properties,

5  979 F.2d at 1362.  Importantly, however, that August 15, 2005 order

6  did not satisfy the first prong of the finality test.  As the court

7  persuasively reasoned in Ashoka Enterprises, Inc. v. Ford Motor

8  Credit Corp., 156 B.R. 343 (S.D. Fla. 1993), a "bankruptcy court's

9  order determining the date of valuation [wa]s not a final order"

10 because:

11              [it] did not pass title to any property and
               did not direct delivery of any property.  It
12             did not award execution and did not determine
               the merits of the case or the substantive rights
13             of the parties.  Furthermore, the bankruptcy
               ruling on the issue of the proper date of valuation
14             did not settle liability, [and] [it] did not
               establish damages[.]

15

16 Id. at 345.  That reasoning applies with equal force here.  Rather

17 than "end[ing] the litigation on the merits[,]" Catlin, 324 U.S. at

18 233), the August 15, 2005, order left unresolved the issue of the

19 amount of damages.  Hence, that order required the parties to

20 "'engage in protracted litigation" as to the property value, before

21 that order would "have any direct impact in the case.'" See Mosier,

22 285 B.R. at 445 (quoting Frontier Properties, 979 F.2d at 1362-63)

23 (other citation omitted).  For these reasons, this court has little

24 difficulty finding that that bankruptcy order was not final.

25      Moreover, adopting the Trustee's argument that the defendant

26 waived his right to object to the valuation date order because he

27 did not immediately appeal it would run afoul of the Ninth

28 Circuit's "flexible approach to finality[]" in the bankruptcy

1   setting.   See Frontier Properties, 979 F.2d at 1363.

2   Significantly, that flexible, "'pragmatic approach' was designed to

3   add an opportunity for appeal in bankruptcy proceedings at the

4   interlocutory stage," not, as the Trustee suggests "to create less

5   opportunity by making interlocutory appeal exclusive."   See id. at

6   1363-64.   That pragmatic approach also "is concerned with

7   preventing irreparable harm to the losing party rather than any

8   prejudice to the prevailing party ([the Trustee] here) from delayed

9   appeal."   Id. at 1364 (internal quotation marks and citation

10  omitted).   In light of the foregoing, there is no basis for the

11  Trustee's suggestion of prejudice arising from defendant's failure

12  to immediately appeal the valuation date order.   Indeed, the Ninth

13  Circuit has expressly "reject[ed] an application" of the pragmatic

14  approach to finality "that would require any point that is

15  determined in either party's favor in an interlocutory order in

16  bankruptcy to be appealed immediately or forever waived."   Id.

17      What is more, the Ninth Circuit has "never held that failure

18  to appeal an interlocutory order barred raising the decided issue

19  after entry of a final judgment."   Id.   "Rather," as that Court

20  explained in Frontier Properties, "where an issue is determined in

21  an interlocutory order and later incorporated into a final order,

22  the determination of the original issue is appealable upon an

23  appeal of the final order thereby providing the district court with

24  an ultimate review on all the combined issues."   Id. (internal

25  quotation marks and citations omitted).   In the present case, the

26  bankruptcy court's September 20, 2006, memorandum decision

27  incorporated the prior finding of a date of sale valuation date.

28  Rec., exh. 9 thereto at 3.   Therefore, that valuation date issue is

1    properly before this court on the appeal from that decision and

2    final judgment entered thereon.

3    ## 2. Date-of-Sale v. Date-of-Dissolution

4         Having found that the valuation date issue falls within the

5    scope of this appeal, the next issue is whether, as the defendant

6    contends, the bankruptcy court's use of the date of sale is

7    "reversible error[.]" Def. Br. (doc. 7) at 10.  Defendant first

8    asserts that the bankruptcy court improperly relied upon Sample to

9    support using the date of sale to value the subject property

10   because, unlike the present case, Sample involved community

11   property.  The bankruptcy court's choice of the date of sale was

12   also error, according to the defendant, because "Arizona case law

13   is clear that the . . . separate real property of one spouse shall

14   be valued as of the dissolution date for determining the

15   community's claims for contributions to the property."  Def. Br.

16   (doc. 7) at 11 (citing Drahos v. Drahos, 717 P.2d 927 (Ariz. Ct.

17   App. 1985); and Honnas, supra, 648 P.2d 1045).  Defendant is right

18   on both counts.

19        The bankruptcy court's reliance upon Sample is misplaced

20   because, as just noted, the issue there was the valuation date for

21   community property, not, as here, the valuation date for separate

22   property.  Initially in Sample the trial court had awarded shares

23   of stock to the husband as his separate property.  The wife

24   appealed, and the court of appeals reversed specifically

25   "mandat[ing] that on remand the shares be treated as community

26   property."  Sample, 731 P.2d at 606 (emphasis added).  While on

27   appeal, "the stock significantly appreciated in value[.]" Id.  On

28   remand the trial court valued some of "the stock as of a date

1  during the pendency of the appeal[,]" but it "chose yet a later

2  valuation date" for other stock.  <u>Id.</u>

3       The husband and wife filed cross-appeals "primarily

4  challeng[ing] the trial court's choice of valuation date regarding

5  the . . . stock."  <u>Id.</u>  "The husband argue[d] that the stock should

6  be valued as of . . . the date of the original dissolution

7  decree[,]" but the court of appeals disagreed.  <u>See</u> <u>id.</u>

8       The court of appeals began its analysis of the valuation issue

9  by declaring that "the trial court was required to divide community

10 interest in the stock shares pursuant to A.R.S. § 25-318(A)."  <u>Id.</u>

11 That statute reads in relevant part as follows:

12              In a proceeding for a dissolution of the
                marriage, . . . , the court shall assign
13              each spouse's sole and separate property
                to such spouse.  It shall also divide
14              the community, joint tenancy and other property
                held in common *equitably*, though not necessarily
15              in kind[.]

16 <u>Id.</u> at 607, n.3 (quoting A.R.S. § 25-318(A))(emphasis added).

17 Based upon that statute, the court of appeals held that the "trial

18 court's choice of valuation date was legally correct[.]"  <u>Id.</u> at

19 606-607.

20      In so holding, the court in <u>Sample</u> offered the following

21 rationale.  Section 25-318(A) vests "broad discretion" in trial

22 courts to "determin[e] the scope of property awards in divorce

23 actions."  <u>Id.</u> at 607.  So broad is that discretion, in fact, that

24 the <u>Sample</u> court found that  the "[t]he only limitation . . . is

25 that the division of community assets results in substantial

26 equality."  <u>Id.</u> (citations omitted).  Reasoning that "the

27 equitableness of a given distribution is the very touchstone of a

28 proper apportionment[,]" the <u>Sample</u> court opined that "a trial

1   court must be allowed to utilize alternative valuation dates."  Id.
2   "Only in th[at] fashion[,]" the Sample Court further opined, can
3   courts "make truly equitable awards as dictated by A.R.S. § 25-
4   318(A)."  Id.   Finally, the court explained that "it would
5   contravene the very purpose of A.R.S. § 25-381(A) for [it] to
6   develop a general valuation rule, let alone the valuation at
7   dissolution formula proposed by [the] husband."  Id. (footnote
8   omitted).

9        As is evident, critical to the analysis of the valuation issue
10  in Sample was the considerable latitude given to courts under
11  section 25-318(A) when making equitable divisions of community
12  property thereunder.  As the defendant in the present case is quick
13  to point out though, the first sentence of that statute, which
14  pertains to separate property such as the property at issue in this
15  case, does not include an "equitable requirement[.]" See Def. Br.
16  (Doc. 7) at 11.  Equity only comes into play under section 25-
17  318(A) when the property to be divided is "community, joint tenancy
18  and other property held in common[.]" See A.R.S. § 25-318(A).
19  Thus, because the present case involves solely separate property,
20  the equitable considerations which supported a valuation date other
21  than the date of the dissolution decree in Sample are not present
22  here.  Equitable considerations are not permitted under A.R.S.
23  § 25-318(A) when assigning separate property upon marital
24  dissolution.  Accordingly,  the court disagrees with the bankruptcy
25  court that Sample "appears directly on point."  See Rec., exh. 5
26  thereto at 4.

27       The Trustee attempts to bring this case within the ambit of
28  Sample by asserting that it "revolves around community property -

- 15 -

1   namely the community interest in the subject property."  Tr. Brief
2   (doc. 8) at 10.  This ignores the fact that the subject property is
3   separate property, and it retains that separate property status
4   regardless of the expenditure of community funds.  See Potthoff v.
5   Potthoff, 627 P.2d 708, 715 (Ariz. Ct. App. 1981) (citation
6   omitted) ("[I]f in fact community funds are used to improve
7   separate real property, the underlying real property does not
8   become community property.") The Trustee's position also ignores
9   the fact that because separate property is at issue here, as
10  opposed to community property, this is not a situation like Sample
11  where "[t]he court, in effect, simply returned to the wife that
12  which was already hers."  Sample, 731 P.2d at 607 (internal
13  quotation marks and citation omitted).  In short, the court finds
14  that the bankruptcy court erred by employing the date of sale,
15  rather than the date of dissolution, as the valuation date for the
16  subject separate property.

17      The bankruptcy court's reliance upon Kelsey, supra, is
18  similarly misplaced.  As recited by the bankruptcy court, Kelsey
19  does provide that "[t]he valuation of assets is a factual
20  determination that must be based on the facts and circumstances of
21  each case."  Kelsey, 918 P.2d at 1069 (citation omitted); see also
22  Rec., exh. 5 thereto at 6.  Arguably that broad statement, read in
23  isolation, could support using the date of sale to value the
24  property at issue herein.

25      A close reading of Kelsey shows, however, that not only is it
26  factually distinguishable, but the issue of a valuation date never
27  arose in that case.  At issue in Kelsey was whether a hair
28  transplant business should be valued as a service or as a medical

practice.   In finding that the trial court erred in concluding that
that business was a service rather than a medical practice, the
court of appeals did recognize that "trial court[s] ha[ve]
discretion to rely on various methods of valuing a professional
practice[.]" Id. (citation omitted).   Nothing in that discussion
even remotely suggests that that discretion encompasses use of a
valuation date other than the dissolution date where, as here, the
community is being reimbursed for community funds expended for the
benefit of separate property.

The Kelsey court's silence on that narrow issue is
understandable.   First, as just noted, the valuation date was not
an issue in Kelsey.   Second, and perhaps more importantly, as
discussed in this court's prior order, the Arizona Supreme Court in
Honnas unequivocally "reaffirm[ed]" the value-at-dissolution
formula" when "community funds are expended for the benefit of
separate [real] property."   Honnas, 648 P.2d at 1046-47 (citations
omitted).   For all of these reasons, upon de novo review the court
must conclude that the bankruptcy court's use of the date of sale
for valuing the subject property was incorrect as a matter of law.

As an alternative to the date of dissolution, defendant
contends that the date of service of the petition for dissolution
is appropriate given its effect under Arizona law.   More
specifically, defendant accurately notes that upon service of such
a petition, property acquired thereafter is the separate property
of that spouse, provided that the petition results in a decree of
dissolution.   See A.R.S. §§ 25-211(2); and 25-213(B).   In the
present case, because debtor Dawn Petersen filed the petition for
dissolution on April 10, 2000, defendant is urging use of that date

1    for valuing the subject property.  Obviously, as defendant points

2    out, use of that April 10, 2000 date would mean that "the

3    appreciation attributable to the improvements would be

4    substantially less."  Def. Brief (doc. 7) at 12.  Therefore,

5    defendant maintains that the court should remand this action yet

6    again; this time "for a determination of the value of the

7    improvements as of April 10, 2000."  Id.

8         While the court agrees that remand is proper and, indeed,

9    necessarily, it declines to find that April 10, 2000, is the proper

10   valuation date.  The court leaves to the bankruptcy court in the

11   first instance the determination as to the appropriate valuation

12   date consistent with this order.[5]

13        IT IS ORDERED that the November 13, 2006, judgment of the

14   bankruptcy court (Rec., exh. 10 thereto) is VACATED; and

15        IT IS FURTHER ORDERED that this case is REMANDED to the

16   bankruptcy court for proceedings not inconsistent with this order.

17        DATED this 24th day of September, 2007.

18

19   _____

20        Robert C. Broomfield
          Senior United States District Judge

21

22

23

24   Copies to counsel of record

25

26

27   ────────────────

28        [5]    This court's determination that remand is required on the valuation
     date issue renders moot the other issues which defendants raise on this appeal.

                                    - 18 -